IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-634

Filed 4 March 2026

Buncombe County, Nos. 18JA000334-100, 20JA000094-100, 20JA000333-100

IN THE MATTER OF: Q.J.P., M.P., K.L.

Appeal by respondent-mother from orders entered 18 March 2025 and 25 April 2025 by Judge Susan M. Dotson-Smith in District Court, Buncombe County. Heard in the Court of Appeals 12 February 2026.

> *Jack Densmore for petitioner-appellee Buncombe County Department of Health and Human Services.*
>
> *Jackson M. Pitts for guardian ad litem.*
>
> *Robinson & Lawing, LLP, by Christopher M. Watford, for respondent-appellant mother.*

STROUD, Judge.

This is Respondent Mother's second appeal. *See In re Q.J.P.*, 296 N.C. App. 175, 907 S.E.2d 442 (2024) (*Q.J.P. I*). She challenges three amended permanency planning orders, entered on remand, that eliminate reunification as a permanent plan for her three minor children. The Buncombe County Department of Health and Human Services (DHHS) moved to dismiss the appeal. It argues that Mother cannot appeal under North Carolina General Statute Section 7B-1001(a)(5) because DHHS filed petitions to terminate her parental rights as to each child within 65 days of the remand orders' entry and service. *See* N.C. Gen. Stat. § 7B-1001(a)(5) (2023). Mother

disagrees. She contends these orders are part of her *Q.J.P. I* appeal, not new orders requiring her to satisfy Section 7B-1001(a)(5) anew. And if that is wrong, she conditionally petitions for a writ of certiorari.

Section 7B-1001(a)(5) allows a parent to appeal directly to this Court from "an order . . . eliminating reunification . . . as a permanent plan"—but only if certain conditions are met. *Id.* Most important here: a "termination of parental rights petition" (TPR petition) must not have "been filed within 65 days of entry and service of the order." N.C. Gen. Stat. § 7B-1001(a)(5)(a)(2). DHHS filed such petitions within 65 days of the remand orders' entry and service. So Mother cannot appeal now. We dismiss her appeal and deny her conditional petition for a writ of certiorari.

## I. Background[1]

Mother has three children—Quincy, Mary, and Keith[2]—born in 2017, 2019, and 2020. Each child has a different father; none is a party to this appeal. DHHS became involved with the family in early 2020 after reports of domestic violence between Mother and Keith's father. That November, DHHS filed juvenile petitions alleging that Quincy, Mary, and Keith were neglected.

On 20 August 2021, the district court entered an order adjudicating all three children as neglected, based in part on Mother's stipulations, and entered dispositions

---

[1] Our prior opinion provides a fuller account of the facts. *See In re Q.J.P.*, 296 N.C. App. 175, 176-78, 907 S.E.2d 442, 444-45 (2024) (*Q.J.P. I*). We include here only what is necessary to resolve this appeal.

[2] We use stipulated pseudonyms to protect the minor children's identities.

in each matter. After ten days of hearings between December 2021 and August 2022, the court entered initial permanency planning orders for each child in February 2023. The court ordered that Quincy and Mary remain in DHHS's custody with guardianship as their primary plan and reunification with their fathers as secondary. As for Keith, the court determined that reunification with either Mother or his father would threaten Keith's health and safety, so it set adoption as his primary plan and guardianship as his secondary plan.

Mother filed a notice to preserve her right of appeal on 9 March 2023. Later, she timely filed a notice of appeal. On appeal, Mother argued that the district court "violated statutory mandates set forth in the Juvenile Code by failing to make the necessary written findings in support of the concurrent plans" eliminating each child's reunification with Mother. *Q.J.P. I*, 296 N.C. App. at 176, 907 S.E.2d at 444. This Court published a decision vacating and remanding several portions of the court's orders on 15 October 2024. *Id.*

We first concluded that Mother's appeal of Quincy's and Mary's permanency planning orders was properly before the Court under Section 7B-1001(a)(5). *Id.* at 179, 907 S.E.2d at 445. We then held that the district court had omitted three required findings in those two orders: (1) a finding that "reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile[s'] health or safety," N.C. Gen. Stat. § 7B-906.2(b)(2023); (2) a finding about "Mother's availability to the court, DHHS, and the GAL," N.C. Gen Stat. § 7B-906.2(d)(3) (2023); and (3) a finding

about whether Mother was "acting in a manner inconsistent with" Quincy and Mary's "health or safety," N.C. Gen Stat. § 7B-906.2(d)(4). *Q.J.P. I*, 296 N.C. App. at 182, 907 S.E.2d at 447-48. As a result, we vacated and remanded Quincy's and Mary's orders for the court to make the required findings. *Id.* at 182, 907 S.E.2d at 448.

Keith's permanency planning order differed from his half-siblings'. *Id.* The district court had found "that reunification at this time would be inconsistent with the minor child's health and safety and need for a safe, permanent home within a reasonable period of time." *Id.* (quoting N.C. Gen. Stat. § 7B-906.2(b)). But the court made no finding about Mother's availability "to the court, the department, and the guardian ad litem for the juvenile." *Id.* at 183, 907 S.E.2d at 448 (quoting N.C. Gen. Stat. § 7B-906.2(d)(3)). So we remanded Keith's order for the court to enter a finding under Section 7B-906.2(d)(3). *Id.* at 184, 907 S.E.2d at 449.[3]

After *Q.J.P. I*, DHHS filed a petition to terminate Mother's parental rights as to all three children in February 2025. One month later, on 18 March 2025, the district court entered orders on remand for Quincy and Keith. Mother filed a notice of appeal from these orders on 16 April 2025, relying on Section 7B-1001(a)(5). The court then entered an order on remand for Mary on 25 April 2025. Mother filed a

---

[3] The Court also noted "contradictory findings of fact regarding Mary's permanent plan." *Q.J.P. I*, 296 N.C. App. at 177, 907 S.E.2d at 445. We therefore remanded for the district court to "reconcile the contradictory findings" and "clearly identify the appropriate primary and secondary plans." *Id.* at 184, 907 S.E.2d at 449.

notice of appeal on 21 May 2025, again citing Section 7B-1001(a)(5). DHHS moved to dismiss Mother's appeal.

## II.  Discussion

Mother makes two arguments on appeal. First, the district court "committed reversible error by eliminating reunification" with her as a permanent plan for Quincy, Mary, and Keith. Second, the court's conclusion that DHHS "made reasonable efforts to reunify" the children with Mother "was not supported by the evidence and must be reversed."

DHHS argues we should dismiss Mother's appeal. It claims that Mother failed to comply with Section 7B-1001(a)(5)'s requirements because DHHS filed TPR petitions for each child within sixty-five days of the remand orders' entry and service. *See* N.C. Gen. Stat. § 7B-1001(a)(5)(a)(2) (allowing a direct appeal to this Court only if, among other things, "a termination of parental rights petition or motion has not been filed within 65 days of entry and service of the order"). Because DHHS filed such petitions, Mother no longer has a "mechanism to pursue a direct appeal." "Mother's appeal is not ripe until the TPR is heard and granted."[4] We agree.

"The right to appeal in juvenile actions arising under Chapter 7B is governed by [Section] 7B-1001(a)." *In re P.S.*, 242 N.C. App. 430, 432, 775 S.E.2d 370, 371

---

[4] DHHS also argues that because TPR petitions "have been filed, [Mother's] notices filed on [16 April] and [21 May] 2025 should be treated as a [n]otice to [p]reserve the [r]ight to [a]ppeal, under [Section] 7B-1001(b)."

(2015). This statute provides that "[i]n a juvenile matter under this Subchapter, only the following final orders may be appealed directly to the Court of Appeals." N.C. Gen. Stat. § 7B–1001(a). The statute then lists various orders from which a direct appeal may be taken, including a permanency planning order that "eliminat[es] reunification . . . as a permanent plan." N.C. Gen. Stat. § 7B-1001(a)(5). A "parent who is a party" may appeal directly to this Court if:

> 1. [The parent h]as preserved the right to appeal the order in writing within 30 days after entry and service of the order[;]
>
> 2. A termination of parental rights petition or motion has not been filed within 65 days of entry and service of the order[; and]
>
> 3. A notice of appeal of the order eliminating reunification is filed within 30 days after the expiration of the 65 days.

N.C. Gen. Stat. § 7B-1001(a)(5)(a).

Mother's appeal fails the second requirement. DHHS filed TPR petitions for each child in February 2025. The district court entered the orders on remand for Quincy and Keith on 18 March 2025 and for Mary on 25 April 2025. DHHS's TPR petitions were thus filed within sixty-five days of each remanded order's entry and service. *See* N.C. Gen. Stat. § 7B-1001(a)(5)(a)(2). So Mother cannot directly appeal under Section 7B-1001(a)(5).

The proper route is Section 7B-1001(a)(8). Under that provision, "[a]n order eliminating reunification as a permanent plan" may be appealed "if all of the following conditions are satisfied":

> a. The right to appeal the order eliminating reunification has been preserved in writing within 30 days of entry and service of the order.
>
> b. A motion or petition to terminate the parent's rights is filed within 65 days of entry and service of the order eliminating reunification and both of the following occur:
>
>> 1. The motion or petition to terminate rights is heard and granted.
>>
>> 2. The order terminating parental rights is appealed in a proper and timely manner.
>
> c. A separate notice of appeal of the order eliminating reunification is filed within 30 days after entry and service of a termination of parental rights order.

N.C. Gen. Stat. § 7B-1001(a)(8). This provision allows a permanency planning order "eliminating reunification" and a TPR order to be appealed together. *See* N.C. Gen. Stat. § 7B-1001(a2) ("In an appeal filed pursuant to subdivision (a)(8) of this section, the Court of Appeals shall review the order eliminating reunification together with an appeal of the order terminating parental rights."). Here, the district court has not "heard [or] granted" the TPR petitions, so Mother cannot yet appeal under Section 7B-1001(a)(8). *See* N.C. Gen. Stat. § 7B-1001(a)(8)(b)(1).

Mother does not dispute this analysis. Instead, she reframes DHHS's argument, characterizing it as "essentially" asking us to "[d]ismiss this appeal as

interlocutory" because she did not file "another [n]otice to [p]reserve the [r]ight to [a]ppeal" before filing a notice of appeal from the orders on remand. According to Mother, the remanded orders are extensions of her 2023 appeal, not new orders requiring fresh compliance with Section 7B-1001(a)(5). She preserved her right to appeal the original orders in 2023. This Court then vacated and remanded Quincy's and Mary's orders and remanded Keith's. On remand, the district court entered orders "purporting to comply with [our] mandate" and without "review[ing] any additional evidence." So, Mother maintains, "the present appeal is not from a new order eliminating reunification as a plan, but rather a supplemental appeal for which this [n]otice has already been given."

This is incorrect. We are aware of no North Carolina case or statute recognizing "supplemental appeals." And more fundamentally, an appellate court's remand for a district court to make additional findings does not change how the orders entered on remand must be appealed. The appeals process remains "governed by [Section] 7B-1001(a)." *In re P.S.*, 242 N.C. App. at 432, 775 S.E.2d at 371. An order entered on remand is a new order. The remand orders here are new permanency planning orders eliminating reunification, so they must satisfy Section 7B-1001(a)(5)'s requirements.

As explained above, they do not. We therefore allow DHHS's motion to dismiss.

Mother also conditionally petitioned for a writ of certiorari. She points to DHHS's "core" argument—that her "failure to file a second [n]otice to [p]reserve [her]

[r]ight to [a]ppeal renders the present appeal interlocutory." Because the appeal is interlocutory, she asserts, we have "authority to issue a writ of certiorari." Mother contends we should grant certiorari because (1) her appeal "has merit," (2) the district court erred in "finding [she] acted in a manner inconsistent with the children's health and safety" without evidentiary support, and (3) "[e]xtraordinary circumstances . . . justify issuing the [w]rit." We disagree.

"[A] writ of certiorari should issue only if there are 'extraordinary circumstances' to justify it." *Cryan v. Nat'l Council of YMCA,* 384 N.C. 569, 572-73, 887 S.E.2d 848, 851 (2023) (quoting *Moore v. Moody*, 304 N.C. 719, 720, 285 S.E.2d 811 (1982)). "There is no fixed list of 'extraordinary circumstances' that warrant certiorari review, but this factor generally requires a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice and liberty at stake.'" *Id.* at 573, 887 S.E.2d at 851 (citation omitted).

No such circumstances exist here. Mother has not lost her ability to appeal the orders entered on remand; her appeal is merely delayed until after the trial court hears and rules on DHHS's TPR petitions. We agree with DHHS that her notices of appeal "filed on [16 April] and [21 May] 2025" would properly "be treated as a [n]otice to [p]reserve the [r]ight to [a]ppeal, under [Section] 7B-1001(b)." If the trial court orders termination of parental rights, Mother will have a right to appeal the

remanded orders and TPR orders together under Section 7B-1001(a)(8).[5]

Accordingly, we deny Mother's conditional petition for a writ of certiorari.

### III.    Conclusion

We allow DHHS's motion to dismiss Mother's appeal, and we deny Mother's conditional petition for a writ of certiorari.

DISMISSED.

Judges GRIFFIN and MURRY concur.

---

[5] We note that Section 7B-1001(a)(8)(b)(1) requires a TPR petition be "heard and granted" before an order eliminating reunification can be appealed under that provision. N.C. Gen. Stat. § 7B-1001(a)(8)(b)(1) (2023). The statute is thus silent on the right to appeal a permanency planning order eliminating reunification when a TPR petition is filed within the sixty-five-day period but then *denied*. One legal scholar has suggested that a party seeking to appeal in that scenario "may need to petition for a writ of certiorari." Sara Depasquale, *Abuse, Neglect, Dependency, and Termination of Parental Rights Proceedings in North Carolina* § 12.31 (7th ed 2023). Because that issue is not before us, we express no view on it.